The next matter, number 24-1379, Better Way Ford, LLC, et al. versus Ford Motor Company. At this time, would counsel for the appellants, Better Way Ford, please introduce himself on the record to begin. Good morning. My name is Tim Bryant. I'm the attorney for the appellants. I'd like to reserve one minute for rebuttal, please. May. I represent the appellants, Better Way Ford, Chinquette Family, LLC, Peggy, and Eric Chinquette. Appellants contend that the district court erred in granting appellee's motion to dismiss and respectfully request that this court overturn that decision and remand this case back to the district court for further handling. The district court erred in granting appellee's motion for two primary reasons. The first, the district court failed to apply the Rule 12b-6 standard and instead made its own factual determinations that appellants contend are improper at initial pleasing stage. And second, the district court mistakenly applied the doctrine of claim preclusion to count one of the amended complaint which asserts that Ford violated 10 MRSA Section 1174. The legal standard that the district court was supposed to apply was to accept as true the complaint's well-pled factual allegations and draw all reasonable inferences in favor of the non-moving party, my clients. The complaint was only required to contain sufficient matter accepted as true to state a claim to relief that is plausible on its face. A claim that has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. In this particular case, dealing with the first issue of perjury, there were four main points that my client established in an approximately 228-paragraph complaint that the district court herself noted was very well-pled and pled in detail. Those allegations of perjury or lies, if I can use that word, Your Honors, was that the Ford employee, Ann McDonough, lied when she testified that she was authorized by Ford to provide an affidavit and testimony on Ford's behalf, that she lied when she testified that nothing else was necessary to finalize or execute Ford's approval of the 2015 transaction. Did she say, is that the allegation that she said exactly that? She literally used, nothing else need be done. That was what she was asked specifically by counsel for the party that called her, the adverse party in the so-called Tucker trial, if I can refer to that, Your Honors. That's what she said, nothing else need be done. Counsel, I think you laid out all the statements that you think were lies very well in your brief. I'm just trying to understand, is your 12B6 standard error argument really focused on the district court considering the entirety of the transcript of the testimony by Mrs. McDonough or that you think the district court drew inferences that a jury should have been allowed to draw? I'm just curious what you think would have happened if this claim went to trial because at the end of the day, somebody would be comparing what she said before to what she said in 2022, correct? What exactly is the error that you think the district court made there? It's both. Leaving aside race judicata for a second as far as looking at the original record, it appears what the court did was do it for both, not just the race judicata component, which she set up relying on a case that allows that pursuant to this court's ruling that you can consider the original record. But it appears she did the same thing on the rest of the claims. But leaving that aside, our real argument, the crux of what you're asking about, she drew conclusions. She compared facts and weighed facts. She made factual determinations. As you can tell from the transcript, we have the oral argument. She was struggling with that. Judge Schwartz is a smart, talented person, and she was struggling intellectually with can I do that or not, and we were suggesting she can't. She has to look at them, assume they're true, and say is it plausible that if they're true, Wasn't she testing the plausibility of your allegation? I thought what she was doing was, you know, again, this isn't sort of a normal factual situation. You have text, and judges look at text all the time and decide is this text, you know, different from this text and what's the legal relevance of it. So her job was to see whether based on your allegations in the complaint and what actually was testified to, was it plausible that she had satisfied all the requirements of the civil perjury statute. So, again, what exactly did she do in testing for plausibility that you think violated the 12B6 legal standard? Sure, because she was weighing one over the other rather than saying ours is true, and based on its truth, you have to assume that nothing can contradict it. She went further than that. Can you take us through a statement and tell us why the allegations could only be understood to be plausibly false? She wasn't saying that she was totally plausible, because I take a district court's view as I look at it, and it's just not clear that as a legal matter, what she's saying is false as opposed to, you know, I can't quite tell what she's saying, talking out of both sides of her mouth or something like that. If you had pled that, here's a person who really couldn't make heads or tails of what she was saying, that wouldn't satisfy the civil perjury standard, right? So you're saying, no, what she said plausibly was there was nothing more that needed to be done. It was approved, right? But that's one statement among many she made that bear on the approval question. And I take the district court to be saying when I look at the totality with respect to each of the claimed lies, it's just not clear that what she's saying is definitive enough to get past the line. That's how I read the district court. Is that wrong? I read it differently, Your Honor. I read it that she actually weighed them and made the determination that those other things were true and opposite to what we were saying, and thus it wasn't plausible. Suppose I don't read the district court as having done that. Would it be error, and why would it be error, to dismiss the claims as to each statement if what I took the district court to be doing is saying, I just think it doesn't meet the threshold of plausibility because it's too unclear what she meant by approval and what she meant by what she was really saying as to whether anything else needed to be done and what she meant by authorized, et cetera. Right, right. What then? Well, I think two things. Number one, to go back to the question that Your Honor asked about what is she allowed to look at, right? The opinion says original record. What original record? The franchise board hearing, the original trial, the discovery in both matters, the pretrial motions in both matters. I don't think that exercise was done here. She mainly looked at the full testimony, right? Are you saying that she wasn't permitted to do that, that she should only look at the statements you put in your complaint? I'm saying that in the race judicata claim, there is precedent for the fact that she can look at the original record of the rest of the claims. I don't think that that's... Leaving aside the race judicata claim, focusing on your perjury claims. Yeah, I would say that it's unclear from her decision what she did look at, what's the original record. I think when you look at that, what does original mean? You can't, I mean, say in X case she testified perjuriously, and I'm alleging that because she said X. But the trial transcript has her in the next sentence saying, oh, sorry, that was a mistake. I didn't mean it. I meant the opposite. You couldn't do that, right? I appreciate your point, Your Honor. Okay. But that's not, ironically, the district court has accused my client of cherry picking. That's my word. I think she is selectively choosing, which I'd call zealous advocacy. Ha ha. But that's exactly what the district court did. She went and picked different things and brought them to bear. But I'm now asking, let's set aside that if the district court said, look, I believe this statement more than the other statement, it would be error. Okay. If she instead says, I look at the two statements and when I put them together, I can't see how a person who says those two things as a matter of law is plausibly lying as opposed to just being unclear. That second thing wouldn't be a misapplication. It might be a misapplication. It's not a misstatement of the standard. I agree with that. So you must be saying on this record that just as a matter of law is wrong.  The only way to read her is as plausibly lying. Correct. When you look at those statements. Well, it's plausible that she is lying.  Not that's the only way to read it. And as a matter of law, that's what you have to conclude from those things. Right. So just take us through one. Explain why is that when I look at it.  I'll give you a good example. The easiest one is the authority. Okay. She signs an affidavit swearing she's an authorized representative of the court. Go to the Tucker trial. There's a sidebar to talk about that, to confirm that. She then confirms that under oath again. I depose her in the franchise board hearing. Ask her as a fact witness, present the affidavit. Is everything in this affidavit true? Yes. Then ask her the next day or day after in a corporate deposition on behalf of Ford Motor Company. Is everything you testified in your fact deposition true? She says yes. Then we go to the trial, and she announces for the first time, not so much. That wasn't truthful testimony at the trial. Did she say that? She said, I asked her, is that statement true, the affidavit true? She said no. Or she said something to that effect. But she explained what she meant by that. She then goes on to explain it.  But now, so which is it, Your Honor? Is it she's authorized or she was not? When she was at trial, she didn't say, well, here's an explanation. I hate to quote, you know, it depends on what the meaning of is is. But, I mean, isn't that what the district court's saying? It depends what the meaning of authorized is. And that's where I get to where Your Honor was going about if we assume X, and now we're talking about this hypothetical Y. That's for a jury to determine. I think it's the correct standard, plausibility. But I would respectfully suggest if the judge is digging down that deep and making the call about what is is, she's fact finding. Because that's not only one, it's not is plausibility the only conclusion, it's is it plausible, as opposed to what Your Honor said, which is plausibility is the only conclusion from this. I don't think that's the standard. I think the standard is is it plausible? And certainly her testifying authorized, authorized, authorized, authorized, no, I'm not, and giving an excuse after clearly being coached because she said, I learned between the deposition and trial. The second thing, I think it's in a footnote with respect to new material. Could you have figured this out before? Is there any reason why the probing that was done later as to what those words meant couldn't have been done earlier? And if not, doesn't that undermine the claim just for that reason alone? I respectfully suggest not. That wasn't trial counsel. But I don't see how trial counsel could have thought that she wasn't. She signs an affidavit. She appears in court. It was all done after discovery. But they objected. Well, they asked the question, is she an authorized representative? And the judge says, she said she is, so she is. So he says, okay, because he has no reason to disagree with it at the time. If she had been deposed, Your Honor, if there had been discovery with her, I totally agree with your analogy. Does that mean you blah, blah, blah? Say that again. I'm sorry. What does it mean to be authorized? Have you checked with anyone? Do they know you're testifying? You could have asked all those questions. If there had been any reason to suspect that she was. There's no indication she would have lied about that. What's that? There's no indication she would have lied in response to any of those questions. The fact that she did it in discovery, Your Honor, in the franchise board hearing twice when she was represented by counsel and she testified in that same deposition, she had prepared for the depositions by meeting with counsel and she still repeated the untruthful statements twice, I think that undermines the hypothetical that Your Honor is asking. Well, I understand it. I would suggest you go back to what was trial counsel supposed to do. This person appears post-discovery. She is a manager. She had worked for Ford for more than 20 years. I'm authorized to be here. What's his basis for asking that? If we play that out and we're at trial and he asks that question to Challenger and the judge said, you have to have some basis for asking the question at trial. You can't just ask the question because you feel like it to Challenger. I don't know what authorized means. I suppose you could hypothetically. If you had some reason to suspect that she wasn't, Your Honor. But that didn't come out until the franchise board hearing with the key document being you asked about new evidence, that dealer management assertion letter from 2020 that is not responded to by Ford in their brief and the court doesn't mention it either. That's the triggering event here. You asked about new evidence. That's when my client realized two years after the trial, hey, somebody here has not been telling me the truth. They said stock transfers were different. But this is a stock transfer. This is a merger. Now all of a sudden the rules apply again. Why would that be? That's the new evidence that triggered the jumping off point, if you will, for my client. The idea is that then triggered, oh, maybe all these answers have problems. So my client goes and asks, hey, why is this any different? It's told, well, it's different because, and now the excuse train comes out, clearly trying to, from our perspective. You're saying that casts the statement I'm authorizing differently. Well, that came later. I must confess, Your Honor, I asked that question at trial at the Franchise Board hearing. I was shocked at her answer because she told me twice during deposition she was authorized. So that led me to think, well, wait a minute. How could she be authorized if she never met with anybody? So that's why I started asking the question at the Franchise Board hearing and she recanted. From my perspective, that was recanting. She may not have used the precise words that Your Honor is talking about. That doesn't mean it's not perjury. Counsel, can I move you to the other issue, the claim preclusion issue? Sure. Can I just ask you a practical question first? Why didn't you just bring an original action in superior court against Ford? Why did you? What was the purpose of also bringing the action before the board? I mean, why do we go to superior court, then removal of the federal court, Your Honor? We had statute of limitations issues we had to deal with. So by filing and then staying, we could be sure we weren't going to miss them. I realize there's some case law that suggests that we file with the board their state, but we have other costs here. No, I'm asking, why did you go to the board at all? From our perspective, and I think Ford agreed at the lower level, we think it's a mandatory process that you have to go there. I think there's mixed case law in Maine on that. Sort of like an exhaustion. What's that? Like an exhaustion. Yeah, so a little like filing and moving to stay, so we didn't miss the statute of limitations. Doing that and then filing so we didn't get kicked for not filing there in the first place. That's why we did it, just to be belt and suspenders, Your Honor. That's the answer to your question. One other thing on that, on the claim preclusion, leaving aside the different evidentiary standards, what isn't adjudicative about the board hearing from your position? I don't understand your question, Your Honor. My apologies. So the board hearing, when you're thinking about claim preclusion, the question is did that claim, was it already litigated in a judicial or adjudicative setting? Yep. Why isn't the board hearing in an adjudicative setting, such that the decisions made there are wise? Leaving aside the evidentiary issue. Yep. Right. And the answer to that, as put in our brief, is 1173 of the same act, which gives us the right to continue that matter at trial and have it be used as prima facie evidence against our client, which is an avenue that's not unknown to the Maine legislature, as it's done with the Maine Human Rights Act. Well, that's an argument that it's not final, right? That's an argument that it's not final, not that it's not judicial. I'm sorry? Isn't that an argument that the decision isn't sort of final, not that the tribunal is not a quasi-judicial tribunal? I appreciate the nuance. I'm sorry. I didn't pick up on that. I think the answer is fair. It is the evidentiary standard difference would be the one component, as opposed to it being not final and we're allowed to go there under 1173. I agree with that, Your Honor. And then what do we do about the Maine law that treats as final adjudicative agency decisions even when they can be appealed and it's not final yet on the appeal? Well, I think appeal is a different frame, as opposed to continuing the action like the two examples I gave. Maine law does talk about that with final actions, but those two statutes I used, like this auto dealer statute, the medical malpractice screening and the Maine Human Rights Act statute allow you to continue, even though you have an adverse ruling at the lower administrative level, and I believe under 1173 the Maine Auto Dealers Act has the same ability for cases to continue onward as opposed to being a final action. I still don't fully understand what the significance of that is for purposes of collateral estoppel and finality. Sure. I mean, the appeal is the same case. It's still continuing and it's not over, but they're still treating it as a final adjudication that can have collateral estoppel effect, even though we don't know whether it's going to be overturned. If we went down that path, we chose a different path. I agree with Your Honor. If we went down the 1189B path, it would have been... So, fine, but we still have an adjudicative decision by an agency. What about it is incapable of having collateral estoppel effect? I'm sorry. I thought I was answering the question along with the hypothetical that the evidentiary issues weren't to be considered. So we put it out in our brief that there was evidence that was admitted. Yeah, I don't want you to consider that. Right, yeah. So I agree with the hypothetical. You don't have to apologize. You were doing the right thing. If you get rid of that, then I don't disagree with your hypothetical that that's the one thing we're challenging regarding the adjudicatory proceeding wasn't done properly. It's just the evidentiary basis. Correct. But as far as the appeal... I thought you were making a separate argument. There was something about it being designated prima facie evidence and the like that provided the basis for not giving it collateral estoppel effect. Am I wrong? Why I was saying there would be no collateral estoppel effect is because my client chose the path under 1173 to continue the matter forward knowing that at the trial, Ford would be able to argue this ruling is prima facie evidence against my client by not being able to prevail, like they do with the screening panel for medical malpractice cases and the main human rights cases. Your point is it's not a normal appeal. You can actually relitigate the facts. Exactly. Exactly. Except you have to deal with the burden of prima facie evidence. In the medical malpractice screening panel, Your Honor, in Maine, I'll make sure I get this right, if it's a split decision either way, it can't be mentioned. But if it's unanimous either way, it can be brought up during trial and used as prima facie evidence against whomever the panel rules against. But then what about... But it doesn't make that adjudicatory. But in the list of things that can count as prima facie evidence, included in that, just so I understand what you're getting at, included in that is the separate action finding, finding in a separate action. That is the point. That's right. Now, what that order is going to say, as you know, that matters under appeal, what exactly it's supposed to say. But I guess what I'm just trying to understand is, is there something about the dealer board finding that is more subject to reconsideration than just the ordinary agency decision that could be reconsidered on appeal? It's going to get some deference on appeal, isn't it? Sure, but you're talking about appealing it through 1189B. It's not an appeal, it's a retrial. And I'm saying it's a retrial, Your Honor. But what is that? I'm trying to figure out what that means, practically, when you say it's a retrial. It means we would go to federal court, and like our breach contract, tortious interference, and perjury counts, it would be another count on the agenda, except when the evidence is being presented, whatever the final order is, we're not there yet because it's being appealed from the Franchise Board, that can be introduced as evidence, as prima facie evidence against my client, that this panel felt the same. Isn't that the same thing that would happen if you brought the dealer board action with respect to a prior antitrust claim, that the finding in that could be entered in as prima facie evidence? It would have to be under 1173. That's what the statute says. It would have to be under 1173. That's right. But as I understand it, that action could have collateral estoppel effect. I understand what Your Honor is saying. So why is this any different? There's just another thing that might have collateral estoppel effect. It's a proceeding. Now we have a different proceeding. But the question is, does that proceeding, that earlier one before the board, have collateral estoppel effect? And I respectfully suggest, although it's an unanswered question in Maine law, but I read the statute differently, to say that we are allowed to continue to pursue this claim that we originally filed in Superior Court that was moved to Federal Court. We went to the board, as we're required to do, and we're simply back moving on with that process. No different than the Maine Human Rights Act and in the medical malpractice context. It's no different. Well, what's the case law on that? That's what I said. I admit this is a novel issue. I'm not aware of anybody. So there's no division on that one. It's the same, but we want to know what to do. Sure. I guess in any other case, for instance, since we look at the statute. Why wouldn't we just say that the right way to deal with it is we have Maine law about how to treat agency adjudicative decisions that are not fully resolved, because they are still pending appeal or whatever, that those can have collateral stop-loss effects, save for this out about evidentiary differences. If there's no evidentiary difference, then what's the reason the district court erred? I just am not following where you're getting this idea that somehow this is a different kind of adjudicative decision. And if I may, with your permission, I want to ask a hypothetical question back. If you're faced with this same case, and I was standing here representing someone in a medical malpractice appeal or in an appeal regarding a Maine Human Rights Commission claim, and you made that the law of the First Circuit, it would be flying in the face of both of those statutes, because they allow this process to move forward. No one's saying you can't move forward. It's just a question of whether there's a collateral stop-loss effect of the prior decision. That's right. And the Maine law is agency adjudications can have that effect, save for an evidentiary problem. And that's where I guess I respectfully disagree, as I answered the question earlier. I think it saves evidentiary problems or a statute to the contrary. And here we have a statute to the contrary, C-1173. What is it saying that's to the contrary? What's that? What is it saying that makes it to the contrary? Because it allows for this process for the count to continue in court and have prima facie evidence used against it. That's what I'm saying. I appreciate that I can't point to a case. I'm not arguing that point. I'm not unaware that this is a figure. In the instance of first impression, I'm arguing the statute, not the case law. Thank you. Thank you. Thank you, counsel. At this time, would counsel for the appellee please introduce himself on the record to begin? Good morning, Your Honors. Robert Palumbis for Ford Motor Company. Your Honors, this lawsuit is the third bite that the plaintiffs have taken at litigating their responsibility for breaking off a transaction with their son in 2015 and 2016. And the problems that the district court recognized here all result from that fact. To start first with the civil perjury claim, the baseline here is that this is, under Maine law, a very hard claim to plead and prove. There's a heightened pleading standard. There's a heightened burden of proof. And under Maine Supreme Court case law, both of those requirements are construed strictly. It's supposed to be a difficult case to plead and prove, and in this case, it was not proved. The statute also limits the proper defendants in a civil perjury action. And this is a new point that I just want to address at the outset. Ford is not a proper defendant in this action. The only defendants under the civil perjury statute are the adverse party who presents the witness. But this depends on who's a confederate to the perjury, right? Yes, Your Honor. And there is no ability for the plaintiff to show that Ford is a confederate. The district court never passed on this. The district court didn't pass on it. The court can affirm on this alternative grounds because it's plain from the pleading that- Do you have Maine case law on what a confederate to perjury is? Yes, Your Honor. We cited the Northeast drilling case. That's actually a district court case in which what the court said is the third parties who were sought to be held liable for somebody else's perjury didn't know that the perjury had occurred, so they couldn't be held. They couldn't be confederates. One needs only to look at Black's Law Dictionary to see what a confederate is. It requires- The confederate here is the employee of Ford? Correct. And the allegation- Did it come through in the other case that they were an employee of Ford? It wasn't clear in the other case how they were related. But, Your Honor, the problem is that there's an affirmative allegation, which is at the core of plaintiff's complaint, that Ford did not know about Ms. McDonough's testimony. Ford couldn't have helped, and according to the plaintiff, didn't help, didn't even authorize. So you're saying the nature of the perjury allegation here is what shows that Ford wasn't a confederate? Correct. Had they not pleaded that portion of the perjury allegation, this would be a different case on this issue? Don't you get it? I'm just wondering whether that just takes us into questions about agency law and what an agent is, et cetera, that seem pretty complicated potentially, and we don't have anything on it. The district court didn't pass on it. I understand, Your Honor. I think that if we address it in terms of agency- Why don't we just- if we go- okay. It's the same result in terms of agency. One of the perjury allegations is that Ms. McDonough was allegedly not authorized to present testimony at trial. She's not authorized. She's necessarily acting outside of the scope of her authority. There's no apparent authority because apparent authority requires some act, conduct by the principal, in this case Ford, and there's nothing along those lines that's alleged. So I understand- If you relied on the arguments you actually made to the district court, what happens? The same result, Your Honor. I think that the district court's opinion was very thorough and right on point. Just help us with the four statements, and how come you think the- taking sort of this what's the meaning of is is, I think your opponent says, gee, that's a classic fact question. You couldn't say that's not plausibly a lie, and his contention is if you look at each of these statements, yes, there's ambiguity about it, but the fact that there's ambiguity just means it's a fact question. And I respectfully disagree. I think the district court got it exactly right. So I'd like to walk through the statements. The first one is the idea that Ford had approved the transaction. The plaintiffs argue that was a lie because actually there were further acts that were required for Ford to finalize and approve the transaction. Ms. McDonough testified to exactly those facts at the 2018 trial. On page 328 of the appendix, she said that the letter of understanding still needed to be signed by the regional manager, which was not her. It was somebody named Mark Rogowski. And then once the closing occurs, it would go to Detroit and would be executed. On 331, she testified that she was the initial approver, and then her manager would need to approve the file as well as people in Detroit. They would take a look at it as well. Ms. McDonough had to submit all the documents for their approval. On page 332 of the appendix, she testified that after she had approved the application, then the regional network specialist would check in all the documents, and then there's a franchising coordinator that reviews the documents, and then an assistant secretary signs everything, and she reviews everything before she signs. On top of that, as the district court noted, the letter of understanding itself indicated that it wasn't approved or effective until the assistant secretary had signed it. That's at pages 446 and 447 of the appendix. The assistant secretary is listed on the letter of understanding as Sean McDermott, not Ms. McDonough. She testified clearly and repeatedly on cross-examination by plaintiff's counsel that more was required to be done. It was clear that that was true, and there was no follow-up question to Your Honor's point about what else could have been introduced. In Bean v. Cummings, the main Supreme Court looked at exactly that type of issue and said the plaintiff's perjury claim failed where it was obvious they could have done more at the first hearing. What about authorized? Well, we've talked about the first issue that if she was not authorized, Ford is not a proper defendant. Skipping to that, she had, as a 28-year-old, a 28-year-old employee of Ford who was in court to testify about facts that she had been personally responsible for, she reasonably testified that she was authorized to do that. She believed that she was authorized to do that, and that was, frankly, a conclusion of law that, as the district court said, whether or not it was right, it was certainly not perjury. It was, at worst, inaccurate. It was also, as Your Honor has already... Why is that not like what's the meaning of it? Because, no, because, Your Honor, there also needs to be an allegation of knowingly and willfully perjuring.  They haven't alleged any facts to support that at all. And I think what the testimony in the 2022 board hearing shows is the opposite. And the district court was entitled to look at that because it was attached to their complaint, and it showed that she had every reason to believe that she was authorized. And, again, this isn't... What was the testimony? It was just that she actually should have checked with general counsel? Correct. She said, in retrospect, I should have let somebody know that... The last two? So that's authorized, approved. What are the other two? The other one, and I think it was ultimately sort of broken down into three. In my view, it could be wrong, but the third is the pledge, whether Tucker was allowed to pledge his interest in the dealership. She testified consistently, repeatedly, in both proceedings, that, yes, Tucker was allowed to pledge his interest. What's going on here, as the district court recognized, is a conflation of the term and the idea of pledging a membership interest in LLC, which he can do and Ford knew he was doing and approved of, versus pledging the franchise. That's what she testified to, that you couldn't pledge. She testified to that, and this is what they're relying on, on pages 203 and 206 of the appendix. They're pointing to that testimony from the board hearing to say, see, she testified something different later. But what she testified to was Tucker can't pledge the franchise because what the franchise is is the agreement between Ford and the dealership. It's not just the membership interest. As she testified to, the franchise is awarded. It's the contractual arrangement that allows the Casco Bay Ford to hold itself out as a Ford dealership, to sell Ford vehicles, and that's something that Ford has control over and can't be pledged. She was clear about this in her testimony in both proceedings, and the district court is permitted at the 12B6 stage to look at the testimony and draw that conclusion because it was clear at the time. Can you address the collateral stop? I can, Your Honor. So as the court has already pointed out, main law would apply race judicata and claim preclusion in this situation to administrative proceedings. There will always be some evidentiary differences between how an agency performs to adjudicate the functions versus how a court does, and that's not held to undermine the preclusive effect of a decision by the agency. So I would put aside the evidentiary arguments that the plaintiff has made unless the court has any questions about them because they're just not relevant under the main law. What I think the other point is is a statutory language, which you've talked about in 1173, which has never been interpreted once in the way that the plaintiffs are arguing. What I would point out is if it abolishes claim preclusion for the board proceedings, it also abolishes claim preclusion, according to them, for any judgment under the federal antitrust laws or under the FTC Act. And when you look at the statutory provision of the antitrust laws that it cites to at the end of that, if you go to that provision, that provision expressly preserves collateral stop except in very limited circumstances. That's right, Your Honor. So it would be kind of strange to have picked up that provision with the understanding that collateral stop didn't apply. That's right, Your Honor. I do think also that that provision of the antitrust laws gives a strong clue as to what this provision is doing, which is it's allowing follow-on actions by not only the same dealer involved in the board proceeding but other dealers who might have been. But subject to whatever collateral stop rule there is. But then you just say the collateral stop rule in Maine is X. What do you say to your opponent's argument that, well, then that would mean that applies to the Maine Human Rights Act agency decision or the medical malpractice screening panel decision? Do we have case law in Maine about how to handle those type of things? That's not in the briefing in this case, Your Honor. So I guess the worry is, is this a special kind of agency proceeding that's distinct from the classic agency proceeding? If that distinction even makes any sense. I don't know what classic and special is. But he seemed to be thinking there was one. Well, I think that it is a different kind of agency proceeding in the way that supports the argument that we're making here. I would point the Court to 1189A of the Dealer Act. That's the provision that allows for appeals. And also the Ford v. Darling's case from the Maine Supreme Court that's been cited. Those two things, I think, do lay out pretty clearly what the difference is in appeals from the board. Now, in appeals from board decisions. Because the appeal is really just a separate action. Is that the idea? That's right. It's filed as a new action, but it's an agency. And then there's diversity. Strangely, that appeal can then be brought in federal court, even, or not? No, Your Honor. So that appeal would go through the state system. And, in fact, there is an appeal going through the state system. I'm sorry, Your Honor? Am I right that it has gone? It's pending in the Maine Superior Court? It's still pending. There was a decision by the Superior Court. It resulted in a remand on whether certain documents from the board proceeding should be sealed. The board determined that they should be sealed. That's being appealed again to the Superior Court. All of that will be wrapped up once the sealing decision is done and presumably will go to the law court, I think plaintiffs have indicated. Can't that end up in federal court, that appeal action? I'm sorry, Your Honor? Why can't that action be? I thought we've had cases in dealer board. To my knowledge, that wouldn't end up in a federal court. I thought you could remove that because it's just a new diversity action. It just gets removed, and then you're, we just had a Rhode Island case like that. Your Honor, to be honest with you, I have not looked at that issue. I can tell you what the statute provides for is an appeal to the Superior Court. Yeah, but what does it mean to say appeal? I understand. That's just a reviewing action. It's a new action. The point I'd like to make about the appeal is this. In an appeal under the Dealer Act, the statute provides that findings by the board will be presumed correct, subject to a clear and convincing evidence rebuttal, and there is a right to a jury trial. Which is the general rule for agency. That's the general rule for appeals from this agency. So you're saying that's no different than your typical agency adjudication? I'm not opining one way or another about the main. I think according to Ford v. Darlings, that is odd. The Supreme Court is saying that's strange. This is what I want to ask you because in the Darlings case, which you say supports you, I wasn't really sure about that because there's a jury trial. In other words, when I think about things that have claim preclusive effect, if somebody then tries to retry the claim that you just won and the other tried, you know, they can't do that. But this is a proceeding in which literally you can have another jury trial on the same claim. You can introduce evidence, witnesses, and all that happens is the agency's decision is, you know, It's presumed, no, this is where I'm going. It's presumed correct, absent of showing that it's incorrect, unclear, and convincing evidence. And this is the point I'm trying to make is that they're just simply trying to skirt that. They're using this provision in 1173. But that's not how claim preclusion normally works. In other words, if you've actually met the requirements for claim preclusion, you're done, full stop. You don't get a jury trial where it has some impact but not full. Yes, Your Honor, I agree. And you're getting at the point I'm trying to make, which is that is the direct appeal process that Maine has set forth in this administrative appeal. And it set the substantive standards that would apply to that appeal. The reading that plaintiffs are trying to give to 1173 is something totally different because two reasons. First of all, an 1173 action for damages, as Darlene's makes clear, can be brought in that appeal. So what they're attempting to do is avoid doing that and also avoid the clear and convincing evidence standard and the presumption of correctness that applies in the direct appeal by taking this provision that has never been interpreted by any Maine court in the way they're arguing and would not just apply to a dealer action but would apply to a federal antitrust judgment. They're trying to abolish claim preclusion based on this. All they needed to do was to go through the- Just so I understand. Yes. Obviously, the ruling in the dealer board is not going to be claim preclusive in the appeal. Correct. Right? That would make no sense. But there is a substantive standard. But what you're saying is even though that's not true, it can be claim preclusive just like the antitrust finding, just like any of the other findings, just like a dealer board action that was brought initially in Superior Court can be claim preclusive in any other action for the appeal itself. Yes, Your Honor. Just as a federal judgment in one court- The question is that just does pose a wrinkle in which this same finding is kind of doing two things simultaneously. It's not final for purposes of the appeal itself, but yet it is final for this other purpose. But that's not unusual. Maybe that's what you're just- Exactly, Your Honor. Some state laws allow for preclusive effect while a case is still on appeal. That judgment is final until it's overturned. That's what Maine's rule is, and that's the case here. In those cases, also the thing being appealed isn't preclusive of the appeal. Exactly. And what they're trying to do is just to do an end run around that whole appeal process and the substantive standard. The last thing I would just point I'd like to make about this, Judge Rickleman, is also to point, Your Honor, to 1190 and 1190A of the Dealer Act, both of which, in my view, actually make the board proceedings the primary proceedings. Board proceedings are not mandatory, but there is a right under the Dealer Act to essentially remove from court to the board proceeding to stop the statute of limitations from running. It would be extraordinarily odd, and I think wrong, to read 1173 the way plaintiffs do, which is to just sort of sweep aside the results of the board proceedings when the statute itself appears to give primacy to the decision of the board and provides in 1189 for a direct process of appeal which includes an 1173 claim. I hope that answers your question about that. It is an odd statute, but for this court to reach out and do what the plaintiffs want would just be striking new ground that the main courts have never suggested is right. Thank you. Thank you, Your Honor. Thank you, Counsel. At this time, would Counsel for the appellants please reintroduce himself on the record? He has a one-minute rebuttal. Tim Bryant for the appellants, Your Honors. Two brief issues on the perjury component as opposed to the claim preclusion component. First, the discussion was just had regarding whether or not the pledging of stock and that idea that they're not pledging the company, it's an argument without a distinction. A hundred percent of the stock is full control, and the dealer management assertion letter that triggered all of this, which I told you about earlier, specifically states that the dealership will prevent giving any lender or security holder the right to exercise their remedies in any way which would result in the lender assuming ownership or management control of the dealership. Well, if you pledge a hundred percent of the stock, it's not really complicated to know. You pledged exactly what this letter says you can't do and what they said two years later. That's the first point. The second point is it's noticeably absent from the argument in the brief and from the court. What impact all this would have had? So why does this matter? And I'd ask that all of you consider, if I may finish the point, please look at page 56 of the appendix. It's Tucker Chinquette's testimony at the franchise board hearing where he stated under oath that if he'd not been told by Ford that his dealership transaction had been approved, then he would not have sued his parents for not closing on the deal. That's why it matters. Thank you, Your Honor.  Thank you, counsel. That concludes argument in this case.